UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 08-60125-CIV-COOKE/BANDSTRA

CRYSTAL ENTERTAINMENT &
FILMWORKS, INC., *et al.*,

    Plaintiffs,

v.

JEANETTE JURADO, *et al.*,

    Defendants,

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before me on Plaintiffs' Motion for Summary Judgment. [D.E. 48]. For the reasons stated below, Plaintiffs' motion for summary judgment is granted in part and denied in part.

*I. BACKGROUND*

Crystal Entertainment & Filmworks, Inc. ("Crystal I") and Crystal Entertainment & Filmworks II, Inc. (Individually "Crystal II" and collectively "Plaintiffs" or "Crystal"), two Florida corporations, are in the music and film entertainment business in Florida. Plaintiffs allege that they are the current owners and assignees of "Expose′," a trademark for services related to live performances, personal appearances, merchandise, and pre-recorded music. The band Expose′ ("the Band") was formed in 1984 under a trademark license by Pantera Group Enterprises, Inc. ("Pantera"), the alleged predecessor in interest of Plaintiffs. The Band's first album, released in 1986, was recorded by a trio of singers: Jeanette Jurado ("Jurado"), Ann Curless Weiss ("Weiss")

1

and Gioia Bruno ("Bruno").  The band  followed with a second album in 1989.  In 1992, Kelly Moneymaker ("Moneymaker") replaced Bruno and the Band released their third album.  In 1995, the Band separated.

The members of the Band entered into various agreements with Pantera and then Crystal with respect to the use of the mark Expose′.  Specifically, on May 15, 1995, Jurado, Weiss and Moneymaker purportedly entered into a Release and Settlement Agreement (the "Settlement Agreement" or "RSA") in which the parties acknowledge that Pantera Productions, Inc., Pantera Group Enterprises, Inc. and Charisma Recording, Inc. conceived of and owned the Expose′ mark.[1] (Pls.' Mot. For Summ. J. Ex. A, 4).  Jurado and Weiss entered into a Trademark License Agreement with Crystal I on August 1, 2003 (the "2003 TLA" or "TLA"), in which they acknowledged that Crystal I is the owner of the Expose′ mark.  (Pls.' Mot. For Summ. J. Ex. E, 1). Jurado, Weiss, and Bruno entered into a new Trademark License Agreement with Crystal I on August 1, 2006  (the "2006 TLA" or "TLA"), where they again acknowledged that Crystal I owns the Expose′ mark.  (Pls.' Mot. For Summ. J. Ex. F, 1).

On August 14, 2007, Jurado's counsel wrote to Crystal's counsel to inform him that it had come to the attention of his client that Crystal may not be the owner of the Expose′ mark.  The letter provided  that the members of the Band will pursue their pending application for ownership of the Expose′ mark unless Crystal presents clear and convincing evidence of its ownership of the Expose′ mark.  Consequently, on January 29, 2008, Plaintiffs filed this action against Jurado, Weiss, Bruno, Moneymaker, Paradise Artists, Inc. and Walking Distance Entertainment, LLC (collectively

---

[1] The Release and Settlement Agreement on record in this case is only signed by Jeanette Jurado.

"Defendants"), for trademark infringement, unfair competition, violations of the Anti-Cybersquatting Consumer Protection Act, violations of the Florida Deceptive and Unfair Trade Practices Act, breach of contract, and a constructive trust under Florida law.[2]  Defendants, in their answer, deny that Plaintiffs are entitled to any relief and counterclaim for rescission of the 1995 Settlement Agreement (Count One), the 2003 TLA (Count Two), and the 2006 TLA (Count Three).  [D.E. 39].

On November 24, 2008, Plaintiffs moved for summary judgment to obtain a judgment in their favor with respect to Defendants' counterclaims.  [D.E. 48].  On December 23, 2008 and January 15, 2009, Defendants filed their memorandum and augmented memorandum in opposition, [D.E. 55; 65], to which Plaintiffs replied on January 21, 2009.  [D.E. 66].

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  According to the United States Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate

---

[2]Moneymaker and Paradise are no longer parties to this action.

that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Furthermore, the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

### III. DISCUSSION

#### 1. Failure to Join Pantera

Plaintiffs contend that summary judgment is warranted on Count I of Defendants' Counterclaim because Pantera Productions is not joined as a party. The first requirement of a suit for rescission under Florida law is that the parties to the lawsuit lie in contractual privity. *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007) (citations omitted). A

plaintiff can not bring a rescission claim against someone not a party to the contract. *Id.* On its face, the 1995 Settlement Agreement appears to be between Pantera Productions, Inc., Pantera Group Enterprises, Inc. and Charisma Recording, Inc., and Jurado, Curless and Moneymaker. None of the corporate entities have been named as a party in this suit. Plaintiffs argue that it would be unjust for the court to rescind the Settlement Agreement when Pantera is not present to defend itself, and there is no evidence that Pantera transferred all of its assets to Crystal. Defendants do not address their failure to join Pantera or any of the corporate entities in their Opposition to Plaintiff's Motion for Summary Judgment. I am granting Plaintiff's Motion for Summary Judgment as to Count I because there is no dispute that Plaintiffs were not a party to the 1995 Settlement Agreement.

### 2. *The Statute of Limitations (Count Two)*[3]

Plaintiffs also argue that Defendants are barred from bringing Count Two of their counterclaim by the statute of limitations. Defendants seek to rescind the 2003 Trademark License Agreement in Count II of their counterclaim. The Florida legislature has provided that the statue of limitations for a rescission claim is four years. Fla. Stat. § 95.11(3)(*l*). There is no statute of limitations defense, however, to a compulsory counterclaim. *Stein v. Feingold*, 629 So. 2d 998, 999 (Fla. 3d DCA 1993) (citing *Johnson v. Allen*, 621 So. 2d 507 (Fla. 2d DCA 1993); *Allie v. Ionata*, 503 So. 2d 1237 (Fla. 1987)). Florida's Supreme Court has held that "a compulsory counterclaim in recoupment permits the recovery of an affirmative judgment even though barred as an independent cause of action by the running of the statute of limitations. *Maynard v. Household Finance Corp. III*, 861 So. 2d 1204, 1207 (Fla. 2d DCA 2003) (citing *Allie v. Ionata*, 503 So. 2d 1237, 1239 (Fla.

---

[3]Plaintiffs raised the same defense with regard to Count I of Defendants' Counterclaim. Count I is not addressed in the remainder of this opinion because I granted Plaintiffs' Motion for Summary Judgment as to that Count, *supra*.

1987)).[4]  A counterclaim is compulsory when it arises out of the same transaction or occurrence as the claim it is countering.  *Blasland, Bouck & Lee, Inc. v. North Miami*, 283 F.3d 1286, 1301 (11th Cir. 2002).  Plaintiffs rely, in part, on the 2003 TLA to prove its ownership of the Expose′ mark.  I find that Defendants' counterclaim to rescind that agreement necessarily arises from the same transaction or occurrence.

As in *Allie*, Defendants' compulsory counterclaim is also a counterclaim in recoupment.  In *Maynard*, the court held that a mortgagor's compulsory counterclaim alleging claims for fraud in the inducement and for breach of contract were claims for recoupment and therefore not barred by the statute of limitations.  861 So. 2d at 1205.  Plaintiffs characterize Defendants' counterclaim as a claim for fraudulent inducement, couched in language of mistake and failure of consideration.  Defendants also argue that Defendants were fraudulently induced into signing the agreements.  Viewing the evidence in the light most favorable to the Defendants, their counterclaim could constitute a claim for fraud in the inducement.  I do not find that Count II of Defendants' counterclaim is barred by the statute of limitations.

### 3. *Justifiable Reliance*

Plaintiffs also seek summary judgment on the grounds that Defendants cannot establish justifiable reliance on any factual statements or conditions related to the ownership of the Expose′ trademark.  Defendants seek rescission of two trademark licensing agreements.  Plaintiffs contend

---

[4]In its reasoning, the court explained that the purpose of a statute of limitations is to protect unwitting defendants from the unexpected enforcement of stale claims brought by plaintiffs who have slept on their rights. This purpose is not served if a statute of limitations is used as a shield to bar meritorious defensive actions when plaintiffs, by bringing their claims, have effectively acknowledged that they are prepared to litigate all aspects of the matter. *Maynard*, 861 at 1207 (citing *Allie* at 1240).

that Defendants have asserted a fraudulent inducement claim.[5] Defendants state that the evidence on record, namely the Defendants' declarations, clearly meet the legal requirements for alleging justifiable reliance in a claim of fraudulent inducement. I agree.

To state a cause of action for fraud in the inducement, a plaintiff must allege the following:

1. A misrepresentation of a material fact;
2. That the representor knew or should have known of the statement's falsity;
3. That the representor intended that the representation would induce another to rely on it; and
4. That the plaintiff suffered injury in justifiable reliance on the representation.

*Output, Inc. v. Danka Bus. Sys., Inc*. 991 So. 2d 941, 944 (Fla. 4th DCA 2008) (citation omitted). When determining whether justifiable reliance can be asserted, the question becomes "whether the recipient of the misrepresentation is justified in relying upon its truth. For if the recipient knows that it [the statement] is false or its falsity is obvious to him, his reliance is improper, and there can be no cause of action for fraudulent misrepresentation." *Rose v. ADT Sec. Services, Inc*. 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008) (*quoting M/I Schottenstein Homes, Inc. v. Azam,* 813 So. 2d 91, 94-95 (Fla. 2002) (internal quotes omitted)). A party cannot establish justifiable reliance when proper disclosure of the truth is subsequently revealed in a written agreement between the parties. *Id.* (citations omitted).

Defendants Jurado, Curless and Bruno each submitted declarations stating that they relied "on Ismael Garcia's assurances that Crystal owned the service Mark EXPOSE′" when they signed the TLAs. Plaintiffs argue that Defendants cannot assert justifiable reliance because "[Defendants]

---

[5] "[Defendants] allege fraudulent inducement, although it is couched in language of 'mistake' and 'failure of consideration' because the sole factual basis asserted by Defendants is that [Crystal] did not own the Mark." (Pl's Mot. for Summ. J. at 10).

signed the RSA in 1995 wherein [Defendants] affirmatively acknowledged that Pantera, Crystal's predecessor in interest, was the trademark owner . . . ." (Pl's Mot. for Summ. J. at 7). Plaintiffs claim that, because the truth of ownership is revealed in the RSA, Defendants cannot recover in their action for fraudulent inducement. Plaintiffs' argument is unpersuasive. First, a prior written agreement cannot constitute proper disclosure of the truth for purposes of defeating a claim of fraudulent inducement. Plaintiffs have not cited a single case that supports this reverse argument. Second, the 1995 Settlement Agreement does not establish that *Crystal* owned the trademark. And a statement regarding Crystal's ownership is the fraudulent statement Defendants are claiming they justifiably relied on. Because Plaintiffs have not demonstrated clear ownership of the Expose′ mark, I find that a genuine issue of material facts exists as to whether Defendants justifiably relied on Garcia's representation regarding Crystal's ownership.

### 4. The Economic Loss Rule

Plaintiffs argue that the economic loss rule also bars Defendants' claim for rescission because it is a claim for fraudulent inducement. "The law is well established that the economic loss rule does not bar tort actions based on fraudulent inducement and negligent misrepresentation. *Allen v. Stephan Co.*, 784 So. 2d 456, 457 (Fla. 4th DCA 2000) (citing *Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999); *PK Ventures, Inc. v. Raymond Jones & Assocs., Inc.*, 690 So. 2d 1296 (Fla. 1997)). If the fraud occurs in connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort. *Id*. The economic loss rule will only limit the parties to contractual remedies when the fraud complained of relates to the performance of the contract. *Id.* Here, Plaintiffs assert that "the sole factual basis asserted by Defendants is that Crystal did not own the mark." I believe

8

that it is unlikely that Defendants would have signed a TLA agreeing to pay Crystal for its use of the Expose′ mark if they knew that Crystal did not own the mark. According to the terms of the TLAs, Crystal's ownership played no role in the actual performance under the contract. I find that Plaintiffs have not shown that the economic loss rule prevents Defendants from establishing a claim for fraudulent inducement.

### *IV. CONCLUSION*

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment [D.E. 48] as to Count One is GRANTED and Plaintiffs' Motion for Summary Judgment as to Counts Two and Three is DENIED.

**DONE AND ORDERED** in Chambers, in Miami, Florida, this 22nd day of April 2009.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:

The Honorable Ted E. Bandstra
All counsel of record_____