```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
 2                      MIAMI DIVISION
 3                   CASE 08-60125-CIV-MGC
 4   CRYSTAL ENTERTAINMENT
     & FILMWORKS, INC., et al.,
 5
                          Plaintiff,
 6
           vs.
 7
     JEANETTE JURADO, et al.,              MIAMI, FLORIDA
 8                                         APRIL 8, 2009
                                           WEDNESDAY - 2:00 p.m.
 9
                          Defendants.
10
11           TRANSCRIPT OF PRELIMINARY INJUNCTION
             BEFORE THE HONORABLE MARCIA G. COOKE
12               UNITED STATES DISTRICT JUDGE
13   APPEARANCES:
     FOR THE PLAINTIFF:
14
                           ROBERT KAIN, JR., ESQ.
15                         DARREN SPIELMAN, ESQ.
                           Kain & Associates
16                         750 S.E. Third Avenue, Ste. 100
                           Ft. Lauderdale, FL 33316-1153
17                         rkain@ComplexIP.com
                           dspielman@ComplexIP.com
18                         954-768-9002
     FOR THE DEFENDANT:
19                         LAWRENCE C. NOBLE, ESQ.
                           1001 Partridge Drive, Ste. 300
20                         Ventura, CA 93003
                           805-658-6266
21                         lawrence@noble4law.com
     REPORTED BY:
22                         ROBIN M. DISPENZIERI, RPR
                           Official Federal Court Reporter
23                         United States District Court
                           400 No. Miami Avenue, Ste. 11-2
24                         Miami, FL  33128 - 305/523-5158
                           email: robinc1127@aol.com
25
```

2

```
1            COURTROOM DEPUTY:  All rise.  Court is in session.
2   Your Honor, we have a preliminary injunction hearing in Crystal
3   Entertainment Filmworks, Inc. versus Jeanette Jurado, et al.
4            THE COURT:  Appearing on behalf of Crystal
5   Entertainment and Filmworks, Inc.
6            MR. KAIN:  Robert Kain, Your Honor.  To my right is
7   Darren Spielman of my law firm, Kain and Associates.  To my far
8   right is Joe Maenza, who is part owner of Plaintiff Crystal and
9   its business manager and also in-house counsel.
10           THE COURT:  Appearing on behalf of defendant Jeanette
11  Jurado.
12           MR. NOBLE:  Good afternoon, Your Honor.  Lawrence
13  Noble appearing for defendants Jeanette Jurado, Ann Curless
14  Weiss, Gioia Bruno and Walking Distance Entertainment LLC, a
15  Nevada corporation.
16           THE COURT:  Counsel for plaintiff, this is your motion
17  for preliminary injunction; is that correct?
18           MR. KAIN:  Yes, Your Honor.
19           THE COURT:  Proceed, please.
20           MR. KAIN:  A matter of housekeeping first, Your Honor.
21  Yesterday, the plaintiffs and defendants agreed to try this
22  matter as a non-jury matter and we are scheduled for the two
23  week calendar beginning the last week of April.  I will file
24  the notice either today or first thing tomorrow, Your Honor.
25           THE COURT:  So, counsel, you are saying you are
```

1   waiving your right to a jury trial and wish to proceed by a

2   bench trial; is that correct?

3           MR. KAIN:  Yes, Your Honor.

4           THE COURT:  Thank you very much.

5           MR. KAIN:  Shall I speak from the podium?

6           THE COURT:  Please.

7           MR. KAIN:  Your Honor, we are here on plaintiff

8   Crystal's motion for preliminary injunction.  In essence,

9   Crystal is seeking a preliminary injunction to maintain the

10  status quo and prohibit further live musical performances by

11  the band called EXPOSE' essentially under the grounds that

12  Crystal is the trademark owner, and the trademark license

13  agreement dated in 2006, that we sometimes refer to as the TLA

14  or the 2006 TLA, expired by its own terms the end of 2007, in

15  December 2007.

16          The motion for preliminary injunction was filed in May

17  2008, because Crystal then discovered that the band formed by

18  the Jurado defendants was beginning to perform without a

19  license.

20          THE COURT:  Counsel, I guess I am a little confused.

21  This matter was filed last year, correct?

22          MR. KAIN:  Yes, Your Honor.

23          THE COURT:  And there was no movement at that time for

24  even a temporary restraining, was there?

25          MR. KAIN:  That is correct, Your Honor.  The reason

1   for that was specified by Mr. Maenza's declaration filed in the

2   preliminary injunction papers as well as in our preliminary

3   injunction papers.  Precisely what happened is that this is the

4   second law suit filed.  The first law suit was filed November

5   2007, when there was only two more scheduled concerts under the

6   2006 trademark license or TLA.

7        Because I understand the process in the courts, there

8   was no reason to seek preliminary injunction at that time

9   because the mechanisms of the judicial process just could not

10  work fast enough to stop two concerts that were going to be

11  held within two or three weeks after the filing of the first

12  complaint.

13       THE COURT:  I have stopped concerts within days.

14  That's the whole idea of the TRO, is that something is going to

15  happen now, Judge, and please help me before my clients are

16  irreparably harmed, but be that as it may.

17       MR. KAIN:  I understand, Your Honor.  The monies, all

18  the gross receipts for these concerts were being sent to an

19  escrow agent and Crystal's ten percent commission was being

20  held by the escrow agent.  So, with two concerts and given the

21  fact that there was only about $30,000 in controversy then, it

22  just was not economically worthwhile, nor did it rise to the

23  level of irreparable injury.

24       THE COURT:  Moving on from the standard, my concern,

25  counsel, is in order to get a preliminary injunction you need

1   to show that you are going to prevail at trial.  I am still

2   concerned about the nature of the licenses here.  I am not even

3   quite sure factually how they all come together because there

4   seems to have been a license with one entity.  That seems to

5   have lapsed or expired.  Another license comes up at another

6   time with another entity.

7           So one, is there a license?  If there is one, who has

8   it?  If you have one, like you just said with this escrow

9   agreement and the ten percent commission you already have,

10  haven't these issues already been negotiated such that the

11  Jurado defendants should merely be paying you a license fee,

12  the ten percent that they are already paying you?

13          MR. KAIN:  All good questions, Your Honor.  The

14  history of this entire band began in 1985, when Pantera

15  Productions and Pantera Group -- we'll just call them

16  collectively Pantera -- which was part owned by Ismael Garcia,

17  coined the term EXPOSE' and hired three female band singers.

18  The original band singers created one song that was very

19  popular and then the band disbanded and Pantera Group then

20  located the current defendants, Jurado, Bruno, Weiss, and

21  Moneymaker sometimes switches in and out with Bruno.

22          THE COURT:  During this period of time nobody else is

23  performing as the group, correct?

24          MR. KAIN:  In 1985, when they -- when Pantera then

25  signed personal service agreements with these performers the

1  band was performing.

2          THE COURT:  After that time, when you said they

3  relocated what we're calling the Jurado defendants, between

4  that personal service agreement and the group ceasing to

5  perform and the new EXPOSE', there was nobody else performing

6  as EXPOSE', correct?

7          MR. KAIN:  The original EXPOSE' band members, like I

8  said, cut a record and became popular.  Then the current Jurado

9  defendants signed personal service agreements with Pantera and

10 the current defendants then began performing and cutting

11 additional records.

12         THE COURT:  Was there a period of time where the

13 Jurado defendants -- I want to make sure I am asking this

14 question correctly.

15         Let me use this example, and this is what maybe I am

16 trying to get at.  Very often with these bands, it's not the

17 performer.  I am going to use the group Menudo.  Once you

18 reached 13, or whatever, you got kicked out and new Menudoets

19 came in and performed under that name.  Was this band like

20 that, meaning were there people that just came in and

21 substituted in and out as EXPOSE'?

22         MR. KAIN:  It was exactly like that except there was

23 less turnover of the band members.

24         THE COURT:  When you say less turnover, describe to me

25 the kind of time that we are talking about.  Was somebody

1   substituted such as when Florence fell out of the Supremes?

2   She was there for 20 years and then somebody else comes in.  Or

3   is this one of these things where somebody is coming every 20

4   weeks?

5          MR. KAIN:  I have not memorized every single fact, but

6   I believe what I'm about to say is accurate.  There were three

7   original band members run or operated by Pantera.  Those three

8   band members, after they produced the first record that was

9   popular, left and then Pantera, owned and controlled by Ismael

10  Garcia, retained first Jurado and then Weiss and then, I

11  believe, Moneymaker.  Yes.

12         THE COURT:  None of the present Jurado defendants were

13  members of the original group?

14         MR. KAIN:  That is true, Your Honor.  These facts are

15  documented in the release and settlement agreement dated 1995.

16         Moneymaker was transferred out or she dropped out and

17  Gioia Bruno, who is -- by the way, Moneymaker -- we could not

18  obtain service on Moneymaker, so we are going to drop her to

19  clean up the charges.  Bruno did come in and substitute for

20  Moneymaker.  There were actually two trademark licenses, one in

21  2003 and another in 2006, where it discusses the ability of

22  Moneymaker to come in and sort of pinch hit for Bruno.

23         In any event, the original Jurado defendants began

24  working with Pantera and they produced two or three more

25  records and a greatest hits record and they signed up with

1   Arista, which is the record company, and royalties were coming

2   in.  The band and Pantera had some issues in '93, '94, '95 that

3   led to a release and settlement agreement.

4        In the release and settlement agreement, it released

5   the band members from the personal services agreement, and this

6   is in the release and settlement agreement, and it also

7   indicated and confirmed that Jurado defendants confirmed that

8   the name EXPOSE' was a trademark owned by Pantera and the

9   Jurado defendants had no ownership rights for trademark related

10  to EXPOSE'.

11       Further, the release and settlement agreement provided

12  that none of the Jurado defendants could perform or use the

13  trademark EXPOSE' in any manner, in a musical performance,

14  things like that.  During this time, there are ongoing sales of

15  EXPOSE' band records.

16       THE COURT:  Under the Pantera Group agreement?

17       MR. KAIN:  Under the release and settlement agreement,

18  what our briefs call the RSA agreement, that's 1995.  Arista is

19  paying out the money and the release and settlement agreement

20  also calls for a split in the royalties from the record sales.

21  The split goes something like 33 percent to Pantera and the

22  balance to the Jurado defendants, with some splitting among

23  each of the defendants.

24       Time goes on.  Ismael Garcia decides to stop doing

25  business as Pantera.  He is the shareholder and --

1        THE COURT:  Let me go back.  At the time the release

2   and settlement agreement is negotiated with the terms of who

3   gets paid what, what goes to Arista, what goes to Pantera, what

4   goes to the Jurado defendants, is Pantera an active

5   corporation?

6        MR. KAIN:  The Florida records indicate that it was

7   administratively dissolved.

8        THE COURT:  When?

9        MR. KAIN:  The records indicate 1991.

10       THE COURT:  At the time this contract is negotiated,

11  the actual person that's signing the contract, the corporate

12  entity, does not exist for corporate purposes, correct?

13       MR. KAIN:  That's not true, Your Honor.

14       THE COURT:  Explain to me how this works.

15       MR. KAIN:  Under Florida law relating to dissolved

16  corporations, Pantera did precisely what is required by Florida

17  law.  The Florida Statute is 607.1405.  We have cited this

18  extensively in support of plaintiff's motion for summary

19  judgment, docket 66, on page five.

20       In any event, this statute says "a dissolved

21  corporation continues its corporate existence, but may not

22  carry on any business except appropriate to wind up and

23  liquidate its business and affairs including, A, collecting its

24  assets; B, disposing of its properties that will not be

25  distributed in kind to its shareholders; C, discharging or

1   making provision for discharging liabilities; D, distributing

2   its remaining property among its shareholders according to

3   their interests; E, doing every other act necessary to wind up

4   and liquidate its business affairs."

5        In the release and settlement agreement, directly

6   addressing collecting its assets portion of the Florida

7   statute, the RSA agreement, the release and settlement

8   agreement relates to collecting the trademark assets for

9   EXPOSE'.  As to the statutory discharging its liabilities, the

10  RSA discharged liabilities of each of the Jurado defendants as

11  they relate to the personal service agreements they have with

12  Pantera and also dealt with the income stream from Arista

13  Records based upon the sale of EXPOSE' band records.

14       As to the statute distributing its remaining property,

15  you have this future income stream of musical royalties and

16  therefore the RSA distributed that future EXPOSE' band record

17  royalties among Pantera, as well as each of the Jurado

18  defendants.

19       Further, the RSA talked about the remaining property,

20  which is the trademark EXPOSE', who owns it and how the Jurado

21  defendants are prohibited from using the trademark EXPOSE' in

22  any future activities.

23       Therefore, Your Honor, even if the administrative

24  dissolution of Pantera occurred in '91, it does not mean that

25  Pantera was prohibited under the law to deal with any business.

1   Pantera was required to discharge its liabilities, which is its

2   liability under the personal service agreement, and there was

3   three of them with the Jurado defendants, and further to

4   conserve its assets, which is the goodwill associated with the

5   EXPOSE' trademark, and further to distribute its future income

6   stream, which would be the sale of EXPOSE' band records and CDs

7   and distribute those between the Jurado defendants and Pantera.

8           Now, since Ismael Garcia was the owner of Pantera and

9   the President of Pantera, after all the liabilities of Pantera

10  were dealt with -- and as best I can tell there was no hang

11  over liabilities -- he, Ismael Garcia, as shareholder obtained

12  the rights to not only the future royalty stream from Arista

13  Records as well as the trademark.

14          Now, what happens next is that Crystal is formed to

15  carry forward the ownership of the EXPOSE' trademark and to

16  collect the Arista royalties.  We know that --

17          THE COURT:  Is there an outstanding agreement between

18  Pantera and Crystal as to the agreement?

19          MR. KAIN:  We have not found such an agreement.  We

20  will look for one, but we have not found such an agreement.

21  But we do know that Arista, who is now Sony BMG by way of

22  merger, must have had some written agreement between Pantera

23  because Sony BMG, formerly Arista, is now paying Crystal these

24  royalties.  Sony would not pay royalties unless it had a

25  writing from Pantera transferring it.

1          THE COURT:  Let me ask this question.  If the

2    principal of Pantera is the same principal as in Crystal, would

3    it not be pretty easy to find out if an agreement exists

4    between the two entities?  It's not like we are talking about

5    two entities that are strangers to each other.

6          MR. KAIN:  Your Honor, these things happened in 1995.

7    In the meantime, in 2006, the Jurado defendants decided that

8    they wanted to go back on tour.  There was a revival in these

9    1990's dance records and therefore the sale of the prerecorded

10   music was increasing.  Jurado defendants then approached

11   Crystal, through Ismael Garcia, because they had worked with

12   him and they knew that there was some continuing royalties

13   going to Garcia and Crystal.  So, Crystal and the Jurado

14   defendants signed a trademark license agreement in 2003.

15         Also at that time, deposition testimony of Mr. Maenza,

16   as well as Ismael Garcia, indicates that Crystal interviewed

17   other female singers and there may have been one or two

18   concerts under that 2003 trademark license agreement.

19         THE COURT:  So people other than the Jurado defendants

20   performed using the name EXPOSE'?

21         MR. KAIN:  It is a little bit unclear, Your Honor.  I

22   can't say that there was a clear gelling of agreement between

23   the witnesses on that.  There seems to be an agreement that

24   Crystal had interviewed potential female band members, but

25   there was uncertainty about whether there was actually

1  performances and who the performance --

2        THE COURT:  This is where I am a little concerned.

3  You have the 1995 agreement, the release and settlement, and

4  this is based upon recordings pre 1995?

5        MR. KAIN:  Yes, Your Honor.

6        THE COURT:  And that was the release and settlement

7  agreement saying, listen, stuff that is out there now, this is

8  how we are going to deal with it, correct?

9        MR. KAIN:  Yes, Your Honor.

10        THE COURT:  Was there any discussion of performances

11  in the release and settlement agreement?

12        MR. KAIN:  The Jurado defendants were prohibited from

13  performing in any manner using the trademark EXPOSE'

14        THE COURT:  So they did not perform between 1995

15  and --

16        MR. KAIN:  2003.

17        THE COURT:  What happens in 2003?

18        MR. KAIN:  The Jurado defendants approach Ismael

19  Garcia, owner and president of Crystal, and say that they would

20  like to go on tour because of the revival of the 1990's dance

21  music and the 2003 trademark license agreement was created.

22  But, from a business standpoint, it was not very successful

23  because there was one, maybe two concerts, that's it.

24        THE COURT:  So, why would it not be considered that

25  the EXPOSE' mark is abandoned from 1995 to 2003?

1          MR. KAIN:  Because every Court that has looked at this

2     issue has ruled that as long as there is ongoing sales of

3     records, the trademark is not abandoned.  It's still in use.

4     Effectively, Your Honor, the music industry is not separated

5     into performances on one side and prerecorded music on the

6     other.

7          THE COURT:  So, during the period from 1995 to 2003,

8     were royalties -- you have admitted there are no live

9     performances, so the income stream would have been limited to

10    sales of recordings.

11         MR. KAIN:  Prerecorded music, yes, Your Honor.

12         THE COURT:  So, were there payments made to the Jurado

13    defendants between 1995 and 2003, under the release and

14    settlement agreement?

15         MR. KAIN:  Yes, I believe there were, Your Honor.  Our

16    records from the Sony BMG only go back to 2000.  That's the

17    best we could obtain from them.

18         Your Honor, you have -- I understand where Your Honor

19    is going, but you have to keep it somewhat in context that this

20    was only a $30,000 dispute when we started.  I am not going to

21    spend $200,000 in discovery costs to cross every I and dot

22    every T.

23         The fact is that there were three contracts signed by

24    the Jurado defendants.  One is the 1995 release and settlement

25    agreement.  The second is the 2003 trademark license agreement

1  and the third is the 2006 trademark license agreement.  In each

2  one of those agreements the Jurado defendants acknowledge that

3  Crystal and/or Pantera is the trademark owner.

4         All through this time we know that royalties are being

5  paid from Arista, now Sony BMG, to both the Jurado defendants

6  according to the split established by the release and

7  settlement agreement, as well as monies being paid to Crystal,

8  formerly Pantera, but now Crystal, in accordance with that

9  release and settlement agreement.

10         THE COURT:  So, what do you want the Court to do now?

11         MR. KAIN:  Your Honor, to alleviate your fear

12  regarding the musical performances and the lack thereof, let me

13  read to you, or give you a summation of several court cases on

14  this precise issue where there has been a lapse of live musical

15  performances by a band.

16         In Marshach versus Treadwell, this is cited until our

17  summary judgment brief, Your Honor, Third Circuit, 2001, one of

18  the parties, Treadwell, was the original owner of the mark

19  Drifters under a contract.  Marshach was one of the breakaway

20  band members.

21         Anyway, this was a nonregistered trademark, so there

22  was no federally registered trademark for the Drifters.  I

23  don't know who sued whom, but in any event, the jury found that

24  Marshach was proper owner because the jury found that there was

25  an abandonment because there had been a significant number of

1    years where there was no live musical performances.

2         The trial Judge reversed the jury decision on a --

3    judging as a matter of law stating that there was no

4    abandonment.  The reason the trial Judge did that is that,

5    according to the Third Circuit, he was following Kingsmen

6    versus K-tel International.  This is what the Kingsmen quote,

7    and this is the leading case in this area, although it is a

8    Southern District of New York decision.

9         "We find that the defendants have failed to show

10   either nonuse or intent to abandon.  Even though plaintiffs

11   disbanded their group in 1967, and ceased recording new

12   material, there is no evidence suggesting that they failed to

13   use the name Kingsmen during the period from 1967 to the

14   present to promote their previously recorded albums.

15        "Moreover, the fact that these individuals continue to

16   receive royalties for Kingsmen recordings flies in the face of

17   any suggestion of intent to abandon of the name Kingsmen.

18   These plaintiffs have no more abandoned their right to protect

19   the name of Kingsmen than have the Beatles, the Supremes or any

20   other group that has disbanded and ceased performing and

21   recording."

22        THE COURT:  But those situations are where, even

23   though the group may not be performing, it exists as an entity

24   and you have, for lack of a better word, a rogue who is now out

25   trying to use the name.  The Jurado defendants are not rogues.

1  They were the legally constituted group EXPOSE'.

2         So, it seems as if the issue here, when you talk about

3  likelihood of success on the merits, is whether or not you can

4  prove not only are they rogues, but that somehow this is

5  outside the licensing agreement.  It appears, if there is a

6  valid licensing agreement, you are entitled to damages, not

7  injunctive relief, because your reward can be easily calculated

8  based upon a prior agreement.  No?

9         MR. KAIN:  Except, Your Honor, there are severe

10  restrictions on what the Jurado defendants can do when they

11  perform.  Right now, the 2006 TLA has expired as of its own

12  terms.  It ended in December 2007, and we don't know what

13  EXPOSE' is doing.  I will get to the restrictions that are set

14  forth in the 2006 agreement in a moment.

15         To answer your question directly, Your Honor, there is

16  cases where -- and I will quote from the Trademark Trial and

17  Appeal Board.  "Even though opposers may not have toured with

18  their band from the time Jimmy left the group in 1988 until

19  sometime in 1992, or perhaps later, opposers carried on their

20  activities under the name Survivor, thus we find no

21  abandonment, even though under Illinois law it remained an

22  asset of the dissolved corporation until April of 1993, at

23  which point ownership passed to the shareholders, namely

24  opposers."

25         So there is even case law indicating that the shift of

1    ownership from Pantera through the common shareholder of Ismael

2    Garcia, as well as his position as president and director of

3    both Pantera and Crystal, is accurate.

4           THE COURT:  Tell me what your irreparable harm is.

5           MR. KAIN:  The irreparable harm, Your Honor, under the

6    2006 TLA, or trademark license agreement, the Jurado defendants

7    cannot manufacture or market records.  They cannot appear in

8    motion pictures or modeling.  They cannot appear in

9    advertisements.  They cannot reference themselves as formerly

10   of EXPOSE'.  They are restricted to using the mark EXPOSE' in

11   block letters.  They must use the symbol TM next to it.  They

12   must show every engagement contract to Crystal for approval.

13          There is a very strict definition of gross

14   compensation.  We have no idea if they are complying with

15   reporting all the compensation for all of their musical

16   performances.

17          THE COURT:  Isn't this all problematic?  First of all,

18   aren't you just trying to keep them from appearing in public?

19   They haven't tried to market any records other than the ones

20   that were out there before, correct?

21          MR. KAIN:  As best we know, that is true, Your Honor.

22   We are just trying to preserve a status quo which should be in

23   effect after the 2006 trademark license expired as of December

24   2007.  The parties agreed to an 18-month contract.  They didn't

25   agree -- there is no option to renew or anything else like

1   that.  It was an 18-month contract and I believe with about 20

2   concert dates in it to see how they would perform.

3        THE COURT:  This is where I am going.  You have the

4   original agreement.  There was no agreement with Pantera until

5   Pantera is just about to be dissolved, correct?

6        MR. KAIN:  No, there were personal service agreements

7   with each individual one that --

8        THE COURT:  Prior to 1995?

9        MR. KAIN:  Yes, Your Honor.

10       THE COURT:  How long was that for?

11       MR. KAIN:  Until they were released in 1991 [sic] by

12   the release and settlement agreement.

13       THE COURT:  But those aren't the people performing

14   now, correct?

15       MR. KAIN:  Yes, they are.

16       THE COURT:  So those people perform.  Under the

17   release agreement, you get your royalties, you get your

18   whatever.  That's all still intact, correct?

19       MR. KAIN:  That's true.  Under the release agreement,

20   they were prohibited from performing.

21       THE COURT:  Then you come back and you have this new

22   agreement, correct?

23       MR. KAIN:  2003, the trademark license agreement, yes,

24   Your Honor.

25       THE COURT:  For 18 months.

1          MR. KAIN:  The 2003 agreement, I can't answer how long

2     that was supposed to run.  But the 2003 agreement did have

3     options to renew in it, but they did not perform sufficiently

4     enough to --

5          THE COURT:  This is what I am asking and I am not

6     getting an answer to this question.  What do you want me to

7     have them stop doing, performing?

8          MR. KAIN:  Performing, Your Honor, because they are a

9     hold over trademark licensee.  They signed three contracts

10    indicating that Crystal and its predecessor, Pantera, was the

11    trademark owner.  They performed under all three contracts.

12    They were paid according to the contracts, fully performed.

13    The release agreement, the statute of limitations to overturn

14    that has long run.  The 2003 trademark license agreement, the

15    statute of limitations has long run on that.

16         They operate successfully under the 2006 trademark

17    agreement until four months before the end of the agreement and

18    then they decide Crystal doesn't own the trademark anymore so

19    we are not going to pay them the ten percent commission.

20    That's what the law suit is all about, to get the commission

21    and to force them to abide by these contracts that they have

22    signed for the past 25 years.

23         THE COURT:  Let me hear from the defendants.

24         MR. KAIN:  Thank you, Your Honor.  Oh, Your Honor, one

25    more thing.  In preparing for the hearing today, I noticed that

1    there is a possible false statement.  Defendants have submitted

2    a declaration of David Halfan and indicated it had certain

3    content in it, but their subsequent filing indicates that it's

4    a different declaration.

5           Do you want me to hand this up now or file a paper

6    later on this week?

7           THE COURT:  If you would go ahead and file it, please,

8    sir.

9           MR. KAIN:  Okay.  Thank you.

10          MR. NOBLE:  Lawrence Noble for defendants.  Thank you,

11   Your Honor.

12          THE COURT:  You may proceed, counsel.  I think you

13   understand through my questions to your opposing counsel what

14   my concerns are.

15          MR. NOBLE:  I do, Your Honor.

16          THE COURT:  I am just trying to figure out are your

17   clients trying to play fast and loose with the expiration of

18   the licensing agreement to now go out and do something they

19   never did before, which is, one, reap benefits from live

20   performances and now tell the plaintiff, you know those

21   agreements, they are not worth the paper they are written on.

22          MR. NOBLE:  No, Your Honor, my clients are not doing

23   that.  They are not playing fast and loose.  My clients are

24   performing live in commerce with the understanding that any

25   claim that Crystal or Pantera may have had has been abandoned

1  and lapsed.

2         Specifically in response to your question whether my

3  clients are playing fast and loose, Your Honor, we have

4  attached letters that my clients sent to Crystal, one by

5  attorney David Halfan on August 17, 2007, requesting that

6  Crystal explain the basis for its ownership claim at that point

7  in time and, as a matter of good faith, offering to make ten

8  percent commission deposits into an escrow account, records of

9  which have been routinely sent to Crystal.  Crystal did not

10 answer that letter.

11        I, myself, sent a letter to Mr. Kain on May 28, 2008,

12 requesting the same information.  My clients asked, through me,

13 what facts support your claim of ownership?  We got no response

14 until Crystal filed its complaint on May 28th.  I'm sorry, my

15 letter was dated May 5th.  The complaint was filed May 28th.

16 So Crystal side stepped and ignored both good faith efforts by

17 my clients through letters which have been documented in the

18 Court's file for statements of facts supporting Crystal's

19 claim.  Both ignored.  In any event, the commissions have been

20 paid.

21        We have raised in our opposition, Your Honor, some

22 very serious concerns about the claim of ownership or right to

23 title by Crystal.  We are particularly concerned by a document

24 submitted by Crystal in its motion in which it submits a

25 document called a "nunc pro tunc trademark assignment" signed

1   by Ismael Garcia as former owner of Pantera, and also signed by

2   Ismael Garcia as owner or president of Crystal on December 5,

3   2007, approximately 16 years after Pantera was administratively

4   dissolved.

5         In our request that you take judicial notice, we

6   submitted a copy of a record from the Florida Secretary of

7   State showing that Crystal did not reinstate its own corporate

8   existence until December 3, 2007, two days before Ismael Garcia

9   signed that nunc pro tunc trademark assignment.

10        Because of that and as a result of discovery that we

11   did after we filed our opposition to the motion for preliminary

12   injunction, we started to have grave, grave concern whether

13   Crystal has had any claim of right at any time since Pantera

14   was dissolved in 1991.

15        THE COURT:  What about the release agreement and then

16   the subsequent agreement that expired after 18 months?  Are you

17   saying they had no right to negotiate those contracts?

18        MR. NOBLE:  Yes, we are saying that, Your Honor.  We

19   are saying that they had no right to negotiate those contracts.

20   We are concerned that Crystal made no representations in

21   writing in those contracts of its dissolved status, of

22   Pantera's attempt to wind up its corporate existence many,

23   many, many years after it was dissolved.

24        We believe that in good faith Crystal should have

25   disclosed to the Jurado defendants that neither Pantera nor

24

1  Crystal had any corporate life recognized by the State of
2  Florida.
3       THE COURT:  By not having a corporate life, does that
4  mean the mark has been abandoned?
5       MR. NOBLE:  That is one way that it has been
6  abandoned.  You don't have to be a corporation, as I'm sure the
7  Court knows, to own a trademark.  We are relying on the fact
8  that from the time that the Jurado defendants stopped live
9  performances in 1996, we are not aware of anyone else alive in
10  the world who has performed live until the same Jurado
11  defendants reunited in 2003.
12       THE COURT:  What about the release agreement?  Were
13  the Jurado defendants collectively, were they paid under that
14  agreement?  Did they receive royalties from --
15       MR. NOBLE:  They have been receiving royalties, just
16  the same as what I will call the Crystal entity has been
17  receiving royalties.  Because of that, if Crystal is arguing
18  that the receipt of record royalties establishes a right to the
19  name, that argument would apply equally to my clients who have
20  received about an equal amount of royalties over that same
21  period of time.
22       THE COURT:  Didn't the release agreement say that
23  Pantera owned the mark?
24       MR. NOBLE:  I believe it did.
25       THE COURT:  So, if Garcia is Pantera, and Garcia is

1  Crystal, does not Garcia own that mark?

2              MR. NOBLE:  No, Your Honor, because both Pantera and

3  Crystal are corporate entities which are separate entities from

4  an individual.  I am not aware, Your Honor, of any document or

5  act that transfers the name from either one of the corporate

6  entities to the individual called Ismael Garcia.  I am not

7  aware that he has done anything, his own individual right or

8  name that gives him a personal individual claim to ownership of

9  that mark.

10             THE COURT:  So, does the release agreement recognize

11  only the corporate entity as holding the mark?

12             MR. NOBLE:  Yes, Your Honor.

13             THE COURT:  So, what you would have the Court do is

14  obviously deny the motion for preliminary injunction, but what

15  would the next step be?  You are saying that you would do what

16  in order to pay whom?  Or are you asking me to figure out a way

17  to negotiate how all of this gets paid up?

18             MR. NOBLE:  Based on the letter by attorney David

19  Halfan dated August 17, 2007, Your Honor, the defendants have

20  been making faithfully a ten percent commission deposit into an

21  escrow account.  When Mr. Halfan sent the letter he said, if

22  you can show us reasonably that you own the mark, we will stop.

23  For whatever reason, Crystal chose to ignore that reasonable

24  request.

25             THE COURT:  Now they are saying, here we are, we are

1  showing you we own the mark.  We are telling you that we had

2  it.  We are showing you we owned it through the release

3  agreement.  We are showing that we own it through the agreement

4  to perform.  The reason now that your clients -- let me put it

5  like this.  Your clients want us to abide by an agreement that

6  has expired.

7          MR. NOBLE:  I am not sure I understand Your Honor's

8  comments.

9          THE COURT:  This ten percent escrow issue, that number

10 wasn't pulled out of a hat, was it?  The money that is being

11 held with the escrow agent, the ten percent just didn't get

12 made up.

13         MR. NOBLE:  Well, Your Honor, I don't know.

14         THE COURT:  Doesn't that come out of the agreement?

15         MR. NOBLE:  Not that I'm aware of, Your Honor.  I know

16 Mr. Halfan offered that up.  It is a relatively routine type of

17 commission.

18         THE COURT:  But it's the 18-month agreement that

19 expired under which they were putting -- that plaintiff

20 received ten percent.

21         MR. NOBLE:  I don't know that either, Your Honor.  I

22 am not aware that Mr. Halfan's intent was to follow that

23 agreement.  My only understanding --

24         THE COURT:  So, let me ask the question this way.  Was

25 that not the agreement under the 18-month agreement that

1   expired, that it was ten percent to Pantera/Crystal?

2        MR. NOBLE:  Your Honor, may I review the agreement to

3   answer that?  I would be guessing otherwise.

4        THE COURT:  Yes.

5        MR. KAIN:  Your Honor, if I may assist counsel, it is

6   on page three, paragraph six.

7        THE COURT:  Page three of the agreement?

8        MR. SPIELMAN:  Yes, Your Honor.

9        THE COURT:  I don't have a copy of the agreement out

10  here with me.

11       MR. KAIN:  I have a copy, Your Honor, if you would

12  like me to hand it up.

13       THE COURT:  If you can, please.

14       MR. NOBLE:  I have a copy of that agreement, Your

15  Honor.  Docket page 42 of 82.

16       THE COURT:  What paragraph is it, counsel?

17       MR. SPIELMAN:  Six.

18       THE COURT:  In respect of appearances, you shall pay

19  to the company the sum of ten percent of your gross commission.

20  In respect of the exploitation of merchandising rights -- I

21  assume that's for all the little EXPOSE' dolls that are

22  running around -- you shall pay company the sum of ten percent

23  of your gross compensation.

24       So, the ten percent number wasn't pulled out of a hat.

25       MR. NOBLE:  That is correct, Your Honor.

1          THE COURT:  By virtue of the agreement, they are still

2    following that agreement of the ten percent?

3          MR. NOBLE:  Correct, Your Honor.

4          THE COURT:  So, at that time when the parties got

5    together, it was at least acknowledged that the name EXPOSE'

6    belonged to someone.

7          MR. NOBLE:  Yes, Your Honor.

8          THE COURT:  And that that someone was Mr. Garcia.

9          MR. NOBLE:  No.  That someone would have been Crystal

10   Entertainment according to the express language of the

11   agreement.

12         THE COURT:  And the person who signed the agreement on

13   behalf of Crystal Entertainment was?

14         MR. NOBLE:  My copy does not have a signature line on

15   behalf of Crystal Entertainment, which would be docket page 51

16   of 82.  In the copy that I was served with, it's cut off.

17         THE COURT:  So, that agreement is to last for 18

18   months.  That agreement expires.

19         MR. NOBLE:  Yes.

20         THE COURT:  Crystal says something, but right now you

21   are in this legal limbo.  Your argument is at the time even

22   this was drafted Crystal didn't own the mark.

23         MR. NOBLE:  Yes, Your Honor, that's my argument.

24         THE COURT:  Crystal's argument is we owned the mark

25   then and because we still own the mark, no one can perform as

1    EXPOSE' without our permission.

2         MR. NOBLE:  That appears to be the argument.  If that

3    is Crystal's argument in which it righteously believes, I then

4    would question why Crystal felt the need to create this nunc

5    pro tunc trademark assignment from Pantera to Crystal on

6    December 5, 2007, 18 months after the date of this trademark

7    agreement on August 1st, 2006.

8         THE COURT:  You are saying that is one indicia of

9    abandonment, that they are trying to create something to show

10   this mark belonged somewhere?

11        MR. NOBLE:  Correct, Your Honor.

12        THE COURT:  What are the other indicia of abandonment

13   that you would point the Court to?  What other things would you

14   point to?

15        MR. NOBLE:  The fact that Crystal itself was

16   administratively dissolved during the period of the 2006

17   concerts and was not reinstated by the State of Florida until

18   December 3, 2000.  The fact that Crystal had no artists

19   performing live any world in the world using the name EXPOSE'

20   and the fact that, at least according to the deposition

21   testimony of the principals of Crystal, Joe Maenza, who is

22   sitting here in court, and Ismael Garcia, who is not, that

23   Crystal Entertainment has been essentially defunct,

24   inoperative, inactive, making no money except for the minuscule

25   record royalty payments which are reflected in the pleading in

1    the Court's file.

2          Crystal was out of business, Your Honor, and was doing

3    nothing and saw that the artists who have the direct

4    relationship with the public was starting to work, was starting

5    to make live performing fees, and has now awakened and tried to

6    get back into that band wagon.  They have no evidence or proof

7    that Crystal had any, or employed any commercial exploitation

8    of the mark at live performing during any of the time periods

9    in question, since 1996, when Jurado, Curless Weiss and Bruno

10   stopped performing.

11         They were defunct and out of business, as is correctly

12   and accurately reflected by the records of the Secretary of

13   State of the State of Florida.

14         THE COURT:  Anything else, sir?

15         MR. NOBLE:  No.  I am just here for the Court's

16   questions.

17         THE COURT:  Thank you very much.

18         MR. NOBLE:  Thank you, Your Honor.

19         THE COURT:  A brief response on behalf of the

20   plaintiffs?

21         MR. KAIN:  Yes, Your Honor.  Crystal was contractually

22   prohibited from permitting others to do live performances when

23   they signed the 2003 trademark license agreement and when they

24   again later signed the 2006 trademark license agreement because

25   they gave it to the Jurado defendants.  The Jurado defendants

1   had the exclusive rights during the contract times.

2          Secondly, Your Honor, the theory that there was

3   trademark abandonment for a band name is flawed as made by

4   Jurado defendants.  Not only has the Third Circuit ruled that

5   as long as there is royalty income paid for the sale of

6   prerecorded music does the trademark stay alive and with the

7   owner, but we have Kingsmen case, Southern District of New

8   York, 1983.

9          We have the Robbie case, Ninth Circuit Court, 1999.

10   We have the HEC Enterprises case, Central District of

11   California, 1980.  We have the Stokes case, Southern District

12   of New York, 1989.  We have the Larkin case, Southern District

13   of New York, 1986.  All of these cases are cited in our summary

14   judgment papers, docket 66, on page six and seven.

15          If the defendants' theory is correct, Your Honor, the

16   three people at my table here could go out tonight and perform

17   as the Beatles and that clearly is not what the law

18   contemplates here.

19          THE COURT:  I think you'd have a little bit of time

20   there because we don't have any lapse of time where anyone fell

21   off the grid, for lack of another word, as the Beatles.  There

22   have always been contracts.  There has always been a royalty

23   agreement.  As we all know -- and Ivan might correct me on this

24   one, my music aficionado extraordinaire deputy clerk -- I don't

25   even think the Beatles are on iTunes because they are so

1    carefully controlled and monitored about who has access to

2    Beatles music.

3           But we do know, based upon what happened, that these

4    names of groups sometimes do belong to corporate entities.  For

5    those of us who are familiar with the new Temptations or the

6    new Four Tops, because I think there is only one original Four

7    Tops left and he is about 900, that anybody who goes out and

8    performs as the Four Tops now is performing under the name

9    plate owned by the Motown Company.

10          The question here is, unlike the Beatles, there were

11   periods of time, one, where there are different people

12   performing under the EXPOSE' name; where you have a time period

13   under which there is no clear corporate ownership of the

14   EXPOSE' name; where there is a time period of whether it's

15   unclear about who the corporate owner was given the various

16   ins, outs, active, inactive of Pantera versus Crystal.  We have

17   the indicia with the nunc pro tunc agreement about going back

18   to recapture a period of time.

19          I am just saying, counsel, because I don't know at the

20   present time -- I am going to go back and you will get a

21   decision -- this is not as clad as if the three of us decided

22   we are going to be the new Supremes.  It might be great fun,

23   but I think that the legality would be against us performing

24   that way.

25          MR. KAIN:  Your Honor, I think the corporate

1   ownership, the trademark is clear, and the Jurado defendants

2   are just tossing away 25 years of contract law because they

3   don't want to pay the ten percent anymore.

4          THE COURT:  I think the argument might be the other

5   way around, and I don't know, and I am certain counsel may

6   correct me and I don't mean to impute ill motives to any, I

7   think what may happen is the concept of dance music is a hot

8   commodity.  It may be that the music is hot, see Martha Wash,

9   but the performers are no longer hot.  So, why not take the hot

10  music and adapt it to another cooler, sharper performer and not

11  give the Jurado defendants their 80 percent of the gross,

12  because that's what they would be entitled to under the old

13  agreement.

14         Am I correct, counsel?

15         MR. NOBLE:  Yes, Your Honor.

16         THE COURT:  They would be entitled to 80 percent of

17  the gross.  You would be entitled to ten percent.  So, maybe

18  the agreement ought to be 80/10.  I don't know.

19         What you are asking me to do right now is to say there

20  is no other remedy than to stop the Jurado defendants from

21  performing.  This is not a situation where you have rogue

22  EXPOSE's.  These are the original EXPOSE' members, the original

23  from the release agreement stage, we can agree there, that have

24  always performed as EXPOSE' and that now you would be taking

25  away their livelihood as much as I am taking food from your

1  client's mouth by saying they could go perform and keep 100

2  percent.

3          MR. KAIN:  Your Honor, from an economic standpoint,

4  the Jurado defendants discontinued to operate without a

5  trademark license and therefore they aren't controlled.

6          THE COURT:  Yeah, but who is going to come to see the

7  Jurado defendants?  If I am looking at my Ticketmaster list, I

8  am not showing up to see the Jurado defendants.  I am showing

9  up to see EXPOSE'.  I am showing up to see Coldplay.  I'm

10 showing up to see Don Henley.  I am not showing up to see three

11 guys in a plaid shirt and a guitar.  You are showing up to see

12 someone because they are not only the performers, but the name.

13         I think if we had a trial on damages on this issue,

14 you would bring to me and defense counsel would bring to me

15 what happens when the original performers show up where it is

16 shown that they no longer own the name, who shows up to see

17 them, as opposed to the new people, even though they own the

18 corporate name.  That is the argument for damages.

19         MR. KAIN:  The trademark statute identifies damages.

20 We will save that for trial, Your Honor.

21         THE COURT:  All right, counsel.  I am going to review

22 your papers.  You are still on the calendar for the two-week

23 calendar period beginning April 27th.  So you should have a

24 decision before that time and that will discern your trial

25 posture.

1          MR. NOBLE:  Your Honor, a bit of housekeeping, please.

2    We have your pre-trial conference on April 22nd.  May I make

3    that by telephone?

4          MR. KAIN:  We have no objection, Your Honor.

5          THE COURT:  Can you do me a favor?  Can you submit it

6    in writing so I'm not trying to keep track of all this stuff in

7    my head?  We will have an order out on it.  If it is agreed,

8    let me know in the motion.

9          MR. NOBLE:  One other item, Your Honor.  On Monday at

10   8:00 local time, 5:00 my time while I was still in California,

11   Mr. Kain emailed me a copy of the joint trial stipulation.  I

12   have been on travel all day yesterday, I am here today, and I

13   am traveling back to California tomorrow.

14         THE COURT:  You need some additional time?  If you had

15   until Monday, would that be good for you?

16         MR. NOBLE:  Could I have until Wednesday possibly?

17         THE COURT:  Wednesday is April 15th.  You want to do

18   this on tax day?

19         MR. NOBLE:  Not particularly.

20         THE COURT:  April 15th.

21         MR. KAIN:  Thank you, Your Honor.

22         MR. NOBLE:  Thank you, Your Honor.

23         [Proceedings concluded.]

24

25

```
 1              C E R T I F I C A T E

 2         I hereby certify that the foregoing is an accurate

 3    transcription of proceedings in the above-entitled matter.

 4

 5

 6

 7

 8                         /S/  ROBIN M. DISPENZIERI

      _____    _____
 9      DATE FILED          ROBIN M. DISPENZIERI, RPR-CP
                            Official Federal Court Reporter
10                          United States District Court
                            400 No. Miami Avenue, Ste. 11-2 Floor
11                          Miami, FL  33128 - 305/523-5158
                            Email:  robinc1127@aol.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**A**

abandon 16:10,17
abandoned 13:25 14:3 16:18 21:25 24:4,6
abandonment 15:25 16:4 17:21 29:9,12 31:3
abide 20:21 26:5
ability 7:21
above-entitled 36:3
access 32:1
account 22:8 25:21
accurate 7:6 18:3 36:2
accurately 30:12
acknowledge 15:2
acknowledged 28:5
act 10:3 25:5
active 9:4 32:16
activities 10:22 17:20
actual 9:11
adapt 33:10
additional 6:11 35:14
addressing 10:6
administrative 10:23
administratively 9:7 23:3 29:16
admitted 14:8
advertisements 18:9
affairs 9:23 10:4
aficionado 31:24
afternoon 2:12
agent 4:19,20 26:11
agree 18:25 33:23
agreed 2:21 18:24 35:7
agreement 3:13 5:9 6:4 7:15 8:3,4 8:5,6,11,16,17,18,19 9:2 10:5,7 10:8 11:2,17,18,19,20,22 12:3 12:14,18,22,23 13:3,7,11,21 14:14,25,25 15:1,7,9 17:5,6,8,14 18:6 19:4,4,12,17,19,22,23 20:1 20:2,13,14,17,17 21:18 23:15,16 24:12,14,22 25:10 26:3,3,5,14 26:18,23,25,25 27:2,7,9,14 28:1 28:2,11,12,17,18 29:7 30:23,24 31:23 32:17 33:13,18,23
agreements 5:25 6:9 10:11 15:2 19:6 21:21
ahead 21:7
al 1:4,7 2:3
albums 16:14
alive 24:9 31:6
alleviate 15:11
amount 24:20
and/or 15:3
Ann 2:13
answer 17:15 20:1,6 22:10 27:3
anybody 32:7
anymore 20:18 33:3
Anyway 15:21
Appeal 17:17
appear 18:7,8
appearances 1:13 27:18
appearing 2:4,10,13 18:18
appears 17:5 29:2
apply 24:19
approach 13:18
approached 12:10
appropriate 9:22
approval 18:12
approximately 23:3
April 1:8 2:23 17:22 34:23 35:2,17 35:20
area 16:7
aren't 18:18 19:13 34:5
arguing 24:17
argument 24:19 28:21,23,24 29:2 29:3 33:4 34:18
Arista 8:1,18 9:3 10:12 11:12,16,21 11:23 15:5
artists 29:18 30:3
asked 22:12
asking 6:13 20:5 25:16 33:19
asset 17:22
assets 9:24 10:6,8 11:4
assignment 22:25 23:9 29:5
assist 27:5
associated 11:4
Associates 1:15 2:7
assume 27:21
attached 22:4
attempt 23:22

**B**

attorney 22:5 25:18
August 22:5 25:19 29:7
Avenue 1:16,23 36:10
awakened 30:5
aware 24:9 25:4,7 26:15,22

**B**

B 9:24
back 9:1 12:8 14:16 19:21 30:6 32:17,20 35:13
balance 8:22
band 3:11,17 5:14,17,18,19 6:1,7 6:19,23 7:7,8 8:2,5,15 10:13,16 11:6 12:24 15:15,20 17:18 30:6 31:3
bands 6:16
based 10:13 13:4 17:8 25:18 32:3
basis 22:6
Beatles 16:19 31:17,21,25 32:2,10
began 5:14 6:10 7:23
beginning 2:23 3:18 34:23
behalf 2:4,10 28:13,15 30:19
believe 7:6,11 14:15 19:1 23:24 24:24
believes 29:3
belong 32:4
belonged 28:6 29:10
bench 3:2
benefits 21:19
best 11:10 14:17 18:21
better 16:24
bit 12:21 31:19 35:1
block 18:11
BMG 11:21,23 14:16 15:5
Board 17:17
breakaway 15:19
brief 15:17 30:19
briefs 8:18
bring 34:14,14
Bruno 2:14 5:20,21 7:17,19,22 30:9
business 2:9 8:25 9:22,23 10:4,25 13:22 30:2,11

**C**

C 1:19 9:25 36:1,1
CA 1:20
calculated 17:7
calendar 2:23 34:22,23
California 31:11 35:10,13
call 5:15 8:18 24:16
calling 6:3
calls 8:20
can't 12:22 20:1
carefully 32:1
carried 17:19
carry 9:22 11:15
case 1:3 16:7 17:25 31:7,9,10,11 31:12
cases 15:13 17:16 31:13
CDs 11:6
ceased 16:11,20
ceasing 6:4
Central 31:10
certain 21:2 33:5
certify 36:2
charges 7:19
chose 25:23
Circuit 15:17 16:5 31:4,9
cited 9:17 15:16 31:13
clad 32:21
claim 21:25 22:6,13,19,22 23:13 25:8
clean 7:19
clear 12:22 32:13 33:1
clearly 31:17
clerk 31:24
clients 4:15 21:17,22,23 22:3,4,12 22:17 24:19 26:4,5
client's 34:1
coined 5:17
Coldplay 34:9
collect 11:16
collecting 9:23 10:6,8
collectively 5:16 24:13
come 5:3 7:19,22 19:21 26:14 34:6
comes 5:5 7:2
coming 7:3 8:1

**C**

comments 26:8
commerce 21:24
commercial 30:7
commission 4:19 5:9 20:19,20 22:8 25:20 26:17 27:19
commissions 22:19
commodity 33:8
common 18:1
company 8:1 27:19,22 32:9
compensation 16:15 27:23
complaint 4:12 22:14,15
complying 18:14
concept 33:7
concern 4:24 23:12
concerned 5:2 13:2 22:23 23:20
concerns 21:14 22:22
concert 19:2
concerts 4:5,10,13,18,20 12:18 13:23 29:17
concluded 35:23
conference 35:2
confirmed 8:7,7
confused 3:20
conserve 11:4
considered 13:24
constituted 17:1
contemplates 31:18
content 21:3
context 14:19
continue 16:15
continues 9:21
continuing 12:12
contract 9:10,11 15:19 18:12,24 19:1 31:1 33:2
contracts 14:23 20:9,11,12,21 23:17,19,21 31:22
contractually 30:21
controlled 7:9 32:1 34:5
controversy 4:21
COOKE 1:11
cooler 33:10
copy 23:6 27:9,11,14 28:14,16 35:11
corporate 9:11,12,21 23:7,22 24:1 24:3 25:3,5,11 32:4,13,15,25 34:18
corporation 2:15 9:5,21 17:22 24:6
corporations 9:16
correct 2:17 3:2,21,25 5:23 6:6 9:12 13:8 18:20 19:5,14,18,22 27:25 28:3 29:11 31:15,23 33:6 33:14
correctly 6:14 30:11
costs 14:21
counsel 2:9,16,25 3:20 4:25 21:12 21:13 27:5,16 32:19 33:5,14 34:14,21
COURTROOM 2:1
courts 4:7
Court's 22:18 30:1,15
create 29:4,9
created 5:18 13:21
cross 14:21
Crystal 1:4 2:2,4,8 3:9,12,17 11:14 11:18,23 12:2,11,13,13,16,24 13:19 15:3,7,8 18:3,12 20:10,18 21:25 22:4,6,9,9,14,16,23,24 23:2,7,13,20,24 24:1,16,17 25:1 25:3,23 28:9,13,15,20,22 29:4,5 29:15,18,21,23 30:2,7,21 32:16
Crystal's 3:8 4:19 22:18 28:24 29:3
Curless 2:13 30:9
current 5:20 6:8,10
cut 6:8 28:16
cutting 6:10

**D**

D 10:1
damages 17:6 34:13,18,19
dance 12:13 20:10 33:7
Darren 1:15 2:7
date 29:6 36:9
dated 3:13 7:15 22:15 25:19
dates 19:2
David 21:2 22:5 25:18
day 35:12,18
days 4:13 23:8
deal 10:25 13:8
dealt 10:12 11:10

**D**

December 3:15 17:12 18:23 23:2,8 29:6,18
decide 20:18
decided 12:7 32:21
decides 8:24
decision 16:2,8 32:21 34:24
declaration 4:1 21:2,4
defendant 1:18 2:10
defendants 1:9 2:13,21 3:18 5:11 5:20 6:3,9,10,13 7:12,23 8:7,9 8:12,22,23 9:4 10:10,18,21 11:3 11:7 12:7,10,14,19 13:12,18 14:13,24 15:2,5 16:9,25 17:10 18:6 20:23 21:1,10 23:25 24:8 24:11,13,25 25:9 30:25,25 31:4,15 33:1,11,20 34:4,7,8
defense 34:14
definition 18:13
defunct 29:23 30:11
deny 25:14
deposit 35:20
deposition 12:15 29:20
deposits 22:8
deputy 2:1 31:24
describe 6:24
didn't 18:24 24:22 26:11 28:22
different 21:4 32:11
direct 20:3
directly 10:5 17:15
director 18:2
disbanded 5:19 16:11,20
discern 34:24
discharge 11:1
discharged 10:10
discharging 9:25 10:1,9
disclosed 23:25
discontinued 34:4
discovered 3:17
discovery 14:21 23:10
discusses 7:21
discussion 13:10
DISPENZIERI 1:22 36:8,9
disposing 9:24
dispute 14:20
dissolution 10:24
dissolved 9:7,15,20 17:22 19:5 23:4,14,21,23 29:16
Distance 2:14
distribute 11:5,7
distributed 9:25 10:16
distributing 11:1,4
District 1:1,1,12,23 16:8 31:7,10 31:11,12 36:10
DIVISION 1:2
docket 9:19 27:15 28:15 31:14
document 22:23,25 25:4
documented 7:15 22:17
doesn't 20:18 26:14
doing 8:24 10:3 17:13 20:7 21:22 30:2
dolls 27:21
Don 34:10
don't 15:23 17:12 24:6 26:13,21 27:9 31:20,24 32:19 33:3,5,6,18
dot 14:21
drafted 28:22
Drifters 15:19,22
Drive 1:19
drop 7:18
dropped 7:16
dspielman@ComplexIP.com 1:17

**E**

E 10:3 36:1,1
easily 17:7
easy 12:3
economic 34:3
economically 4:22
effect 18:23
Effectively 14:4
efforts 22:16
either 2:24 16:10 25:5 26:21
email 1:24 36:11
emailed 35:11
employed 30:7
ended 17:12
engagement 18:12
Enterprises 31:10
Entertainment 1:4 2:3,5,14 28:10

28:13,15 29:23
**entire** 5:14
**entities** 12:4,5 25:3,3,6 32:4
**entitled** 17:6 33:12,16,17
**entity** 5:4,6 9:12 16:23 24:16 25:11
**equal** 24:20
**equally** 24:19
**escrow** 4:19,20 5:8 22:8 25:21
26:9,11
**ESQ** 1:14,15,19
**essence** 3:8
**essentially** 3:11 29:23
**established** 1:5 33:12,16,17
**establishes** 24:18
**et** 1:4,7 2:3
**event** 7:23 9:20 15:23 22:19
**evidence** 16:12 30:6
**exactly** 6:22
**example** 6:15
**exclusive** 31:1
**exist** 9:12
**existence** 9:21 23:8,22
**exists** 12:3 16:23
**expiration** 21:17
**expired** 3:14 5:5 17:11 18:23 23:16
26:6,19 27:1
**expires** 28:18
**explain** 9:14 22:6
**exploitation** 27:20 30:7
**EXPOSE** 3:11 5:17 6:5,6,7,21 8:8
8:10,13,15 10:9,13,16,20,21
11:5,6,15 12:20 13:13,25 17:1
17:13 18:10,10 27:21 28:5 29:1
29:19 32:12,14 33:22,24 34:9
**EXPOSE's** 33:22
**express** 28:10
**extensively** 9:18
**extraordinaire** 31:24

**F**

**F** 36:1
**face** 16:16
**fact** 4:21 7:5 14:23 16:15 24:7
29:15,18,20
**facts** 7:14 22:13,18
**factually** 5:3
**failed** 16:9,12
**faith** 22:7,16 23:24
**faithfully** 25:20
**false** 21:1
**familiar** 32:5
**far** 2:7
**fast** 4:10 21:17,23 22:3
**favor** 35:5
**fear** 15:11
**Federal** 1:22 36:9
**federally** 15:22
**fee** 5:11
**fees** 30:5
**fell** 7:1 31:20
**felt** 29:4
**female** 5:17 12:17,24
**figure** 21:16 25:16
**file** 2:23 21:5,7 22:18 30:1
**filed** 3:16,21 4:1,4,4 22:14,15
23:11 36:9
**filing** 4:11 21:3
**Filmworks** 1:4 2:3,5
**find** 12:3 16:9 17:20
**firm** 2:7
**first** 2:20,24 4:4,11 7:8,10 18:17
**five** 9:19
**FL** 1:16,24 36:11
**flawed** 31:3
**flies** 16:16
**Floor** 36:10
**Florence** 7:1
**Florida** 1:1,7 9:6,15,16,17 10:6
23:6 24:2 29:17 30:13
**follow** 26:22
**following** 16:5 28:2
**food** 33:25
**force** 20:21
**foregoing** 36:2
**formed** 3:17 11:14
**former** 23:1
**formerly** 11:23 15:8 18:9
**forth** 17:14
**forward** 11:15

**found** 11:19,20 15:23,24
**four** 20:17 32:6,6,8
**Ft** 1:16
**fully** 20:12
**fun** 32:22
**further** 3:10 8:11 10:19 11:3,5
**future** 10:15,16,22 11:5,12

**G**

**G** 1:11
**Garcia** 5:16 7:10 8:24 11:8,11
12:11,13,16 13:19 18:2 23:1,2,8
24:25,25 25:1,6 28:8 29:22
**gelling** 12:22
**getting** 20:6
**Gioia** 2:14 7:17
**give** 15:13 33:11
**given** 4:20 32:15
**gives** 25:8
**go** 9:1 12:8 13:20 14:16 21:7,18
31:16 32:20 34:1
**goes** 8:21,24 9:3,3,4 32:7
**going** 4:10,14 5:1 6:17 7:18 12:13
13:8 14:19,20 19:3 20:19 32:17
32:20,22 34:6,21
**good** 2:12 5:13 22:7,16 23:24
35:15
**goodwill** 11:4
**grave** 23:12,12
**great** 32:22
**greatest** 7:25
**grid** 31:21
**gross** 4:18 18:13 27:19,23 33:11
33:17
**grounds** 31:1
**group** 5:15,19,23 6:4,17 7:13 8:16
16:11,20,23 17:1,18
**groups** 32:4
**guess** 3:20
**guessing** 27:3
**guitar** 34:11
**guys** 34:11

**H**

**Halfan** 21:2 22:5 25:19,21 26:16
**Halfan's** 26:22
**hand** 21:5 27:12
**hang** 11:10
**happen** 4:15 33:7
**happened** 4:3 12:6 32:3
**happens** 11:14 13:17 34:15
**harm** 18:4,5
**harmed** 4:16
**hat** 26:10 27:24
**haven't** 5:10 18:19
**head** 35:7
**hear** 20:23
**hearing** 2:2 20:25
**HEC** 31:10
**held** 4:11,20 26:11
**help** 4:15
**Henley** 34:10
**hired** 5:17
**history** 5:14
**hit** 7:22
**hits** 7:25
**hold** 20:9
**holding** 25:11
**Honor** 2:2,6,12,18,20,24 3:3,7,22
3:25 4:17 5:13 7:14 9:13 10:23
12:6,21 13:5,9 14:4,11,15,18,18
15:11,17 17:9,15 18:5,21 19:9
19:24 20:8,24,24 21:11,15,22
22:3,21 23:18 25:2,4,12,19
26:13,15,21 27:2,5,8,11,15,25
28:3,7,23 29:11 31:2,18,21 31:2
31:15 32:25 33:15 34:3,20 35:1
35:4,9,21,22
**HONORABLE** 1:11
**Honor's** 26:7
**hot** 33:7,8,9,9
**housekeeping** 2:20 35:1

**I**

**idea** 4:14 18:14
**identifies** 34:19
**ignore** 25:23
**ignored** 22:16,19
**Illinois** 17:21

**impute** 33:6
**inactive** 29:24 32:16
**including** 9:23
**income** 10:12,15 11:5 14:9 31:5
**increasing** 12:10
**indicate** 9:6,9
**indicated** 8:7 21:2
**indicates** 12:16 21:3
**indicating** 17:25 20:10
**indicia** 29:8,12 32:17
**individual** 19:7 25:4,6,7,8
**individuals** 16:15
**industry** 14:4
**information** 22:12
**injunction** 1:11 2:2,17 3:8,9,16 4:2
4:3,8,25 23:12 25:14
**injunctive** 17:7
**injury** 4:23
**inoperative** 29:24
**ins** 32:16
**intact** 19:18
**intent** 16:10,17 26:22
**interests** 10:3
**International** 16:6
**interviewed** 12:16,24
**in-house** 2:9
**irreparable** 4:23 18:4,5
**irreparably** 4:16
**Ismael** 5:16 7:9 8:24 11:8,11 12:11
12:16 13:18 18:1 23:1,2,8 25:6
29:22
**Isn't** 18:17
**issue** 14:2 15:14 17:2 26:9 34:13
**issues** 5:10 8:2
**item** 35:9
**iTunes** 31:25
**it's** 6:16 12:4 14:3 21:3 26:18 28:16
32:14
**Ivan** 31:23
**I'm** 7:6 22:14 24:6 26:15 34:9 35:6

**J**

**Jeanette** 1:7 2:3,10,13
**Jimmy** 17:18
**Joe** 2:8 29:21
**joint** 35:11
**JR** 1:14
**Judge** 1:12 4:15 16:2,4
**judging** 16:3
**judgment** 9:19 15:17 31:14
**judicial** 4:9 23:5
**Jurado** 1:7 2:3,11,13 3:18 5:11,20
6:3,8,13 7:10,12,23 8:7,9,12,22
9:4 10:10,17,20 11:3,7 12:7,10
12:13,19 13:12,18 14:12,24 15:2
15:5 16:25 17:10 18:6 23:25
24:8,10,13 30:9,25,25 31:4 33:1
33:11,20 34:4,7,8
**jury** 3:1 15:23,24 16:2

**K**

**Kain** 1:14,15 2:6,6,7,18,20 3:3,5,7
3:22,25 4:17 5:13,24 6:7,22 7:5
7:14 8:17 9:6,9,13,15 11:19 12:6
12:21 13:5,9,12,16,18 14:1,11
14:15 15:11 17:9 18:5,21 19:6,9
19:11,15,19,23 20:1,8,24 21:9
22:11 27:5,11 30:21 32:25 34:3
34:19 35:4,11,21
**keep** 14:19 18:18 34:1 35:6
**kicked** 6:18
**kind** 6:25 9:25
**Kingsmen** 16:5,6,13,16,17,19 31:7
**knew** 12:12
**know** 11:16,21 15:4,23 17:12 18:21
21:20 26:13,15,21 31:23 32:3,19
33:5,18 35:8
**knows** 24:7
**K-tel** 16:6

**L**

**lack** 15:12 16:24 31:21
**language** 28:10
**lapse** 15:14 31:20
**lapsed** 5:5 22:1
**Larkin** 31:12
**Lauderdale** 1:16
**law** 2:7 4:4,4 9:15,17 10:25 16:3
17:21,25 20:20 31:17 33:2

**Lawrence** 1:19 2:12 21:10
lawrence@noble4law.com 1:21
**leading** 16:7
**led** 8:3
**left** 7:9 17:18 32:7
**legal** 28:21
**legality** 32:23
**legally** 17:1
**letter** 22:10,11,15 25:18,21
**letters** 18:11 22:4,17
**level** 4:23
**liabilities** 10:1,9,10 11:1,9,11
**liability** 11:2
**license** 3:12,19 4:6 5:4,5,7,11
12:14,18 13:21 14:25 15:1 18:6
18:23 19:23 20:14 30:23,24 34:5
**licensee** 20:9
**licenses** 5:2 7:20
**licensing** 17:5,6 21:18
**life** 24:1,3
**likelihood** 17:3
**limbo** 28:21
**limitations** 20:13,15
**limited** 14:9
**line** 28:14
**liquidate** 9:23 10:4
**list** 34:7
**listen** 13:7
**little** 3:22 12:21 13:2 27:21 31:19
**live** 3:10 14:8 15:14 16:1 21:19,24
24:8,10 29:19 30:5,8,22
**livelihood** 33:25
**LLC** 2:14
**local** 35:10
**located** 5:20
**long** 14:2 19:10 20:1,14,15 31:5
**longer** 33:9 34:16
**look** 11:20
**looked** 14:1
**looking** 34:7
**loose** 21:17,23 22:3

**M**

**M** 1:22 36:8,9
**Maenza** 2:8 12:15 29:21
**Maenza's** 4:1
**maintain** 3:9
**making** 10:1 25:20 29:24
**manager** 2:9
**manner** 8:13 13:13
**manufacture** 18:7
**MARCIA** 1:11
**mark** 13:25 15:18 18:10 24:4,23
25:1,9,11,22 26:1 28:22,24,25
29:10 30:8
**market** 18:7,19
**Marshach** 15:16,19,24
**Martha** 33:8
**material** 16:12
**matter** 2:20,22,22 3:21 16:3 22:7
36:3
**mean** 10:24 34:3 33:6
**meaning** 6:20
**mechanisms** 4:9
**members** 6:7,23 7:7,8,13 8:5 12:24
15:20 33:22
**memorized** 7:5
**Menudo** 6:17
**Menudoets** 6:18
**merchandising** 27:20
**merely** 5:11
**merger** 11:22
**merits** 4:17 15:7
**Miami** 1:2,7,23,24 36:10,11
**minuscule** 29:24
**modeling** 18:8
**moment** 17:14
**Monday** 35:9,15
**money** 8:19 26:10 29:24
**Moneymaker** 5:21 7:11,16,17,18
7:20,22
**monies** 4:17 15:7
**monitored** 32:1
**months** 19:25 20:17 23:16 28:18
29:6
**motion** 2:16 3:8,16 9:18 18:8 22:24
23:11 25:14 35:8
**motives** 33:6
**Motown** 32:9

mouth 34:1
movement 3:23
Moving 4:24
music 12:10 13:21 14:4,5,11 31:6 31:24 32:2 33:7,8,10
musical 3:10 8:13 10:15 15:12,14 16:1 18:15

**N**
name 6:19 8:8 12:20 16:13,17,19 16:25 17:20 24:19 25:5,8 28:5 29:19 31:3 32:8,12,14 34:12,16 34:18
names 32:4
nature 5:2
necessary 10:3
need 4:25 29:4 35:14
negotiate 23:17,19 25:17
negotiated 5:10 9:2,10
neither 23:25
Nevada 2:15
never 21:19
new 6:5,18 16:8,11 19:21 31:7,12 31:13 32:5,6,22 34:17
Ninth 31:9
Noble 1:19 2:12,13 21:10,10,15,22 23:18 24:5,15,24 25:2,12,18 26:7,13,15,21 27:2,14,25 28:7 28:9,14,19,23 29:2,11,15 30:15 30:18 33:15 35:1,9,16,19,22
nonregistered 15:21
nonuse 16:10
non-jury 2:22
notice 2:24 23:5
noticed 20:25
November 4:4
number 15:25 26:9 27:24
nunc 22:25 23:9 29:4 32:17

**O**
objection 35:4
obtain 7:18 14:17
obtained 11:11
obviously 25:14
occurred 10:24
offered 26:16
offering 22:7
Official 1:22 36:9
Oh 20:24
Okay 21:9
old 33:12
Once 6:17
ones 18:19
ongoing 8:14 14:2
operate 20:16 34:4
operated 7:7
opposed 34:17
opposers 17:17,19,24
opposing 21:13
opposition 22:21 23:11
option 18:25
options 20:3
order 4:25 25:16 35:7
original 5:18 6:7 7:7,13,23 15:18 19:4 32:6 33:22,22 34:15
ought 33:18
outs 32:16
outside 17:5
outstanding 11:17
overturn 20:13
owned 5:16 7:9 8:8 24:23 26:2 28:24 32:9
owner 2:8 3:12 11:8 13:19 15:3,18 15:24 20:11 23:1,2 31:7 32:15
ownership 8:9 11:15 17:23 18:1 22:6,13,22 25:8 32:13 33:1
owns 10:20

**P**
page 9:19 27:6,7,15 28:15 31:14
paid 9:3 15:5,7 20:12 22:20 24:13 25:17 31:5
Pantera 5:14,15,16,19,24 6:9 7:7,9 7:24 8:2,8,16,21,25 9:3,4,16 10:12,17,24,25 11:1,7,8,9,9,18 11:22,25 12:2 15:3,8 18:1,3 19:4 19:5 20:10 21:25 23:1,3,13,25 24:23,25,25 25:2,2 29:5 32:16
Pantera's 23:22

Pantera/Crystal 27:1
paper 21:5,21
papers 4:2,3 31:14 34:22
paragraph 27:6,16
part 2:8 5:16
particularly 22:23 35:19
parties 15:18 18:24 28:4
Partridge 1:19
passed 17:23
pay 11:24 20:19 25:16 27:18,22 33:3
paying 5:11,12 8:19 11:23
payments 14:12 29:25
people 6:20 12:19 19:13,16 31:16 32:11 34:17
percent 4:19 5:9,12 8:21 20:19 22:8 25:20 26:9,11,20 27:1,19 27:22,24 28:2 33:3,11,16,17 34:2
perform 3:18 6:5 8:12 13:14 17:11 19:2,16 20:3 26:4 28:25 31:16 34:1
performance 8:13 13:1
performances 3:10 13:1,10 14:5,9 15:12,15 16:1 18:16 21:20 24:9 30:22
performed 6:19 12:20 20:11,12 24:10 33:24
performer 6:17 33:10
performers 5:25 33:9 34:12,15
performing 5:23 6:1,5,10 13:13 16:20,23 19:13,20 20:7,8 21:24 29:19 30:5,8,10 32:8,12,23 33:21
performs 32:8
period 5:22 6:12 14:7 16:13 24:21 29:16 32:12,14,18 34:23
periods 30:8 32:11
permission 29:1
permitting 30:22
person 9:11 28:12
personal 5:25 6:4,9 8:5 10:11 11:2 19:6 25:8
pictures 18:8
pinch 7:22
plaid 34:11
plaintiff 1:5,13 2:8,16 3:7 21:20 26:19
plaintiffs 2:21 16:10,18 30:20
plaintiff's 9:18
plate 32:9
play 21:17
playing 21:23 22:3
pleading 29:25
please 2:19 3:6 4:15 21:7 27:13 35:1
podium 3:5
point 17:23 22:6 29:13,14
popular 5:19 6:8 7:9
portion 10:6
position 18:2
possible 21:1
possibly 35:16
posture 34:25
potential 12:24
pre 13:4
precise 15:14
precisely 4:3 9:16
predecessor 20:10
preliminary 1:11 2:2,17 3:8,9,16 4:2,2,8,25 23:11 25:14
preparing 20:25
prerecorded 12:9 14:5,11 31:6
present 7:12 16:14 32:20
preserve 18:22
president 1:19 13:19 18:2 23:2
pretty 12:3
prevail 5:1
previously 16:14
pre-trial 35:2
principal 12:2,2
principals 29:21
prior 17:8 19:8
pro 22:25 23:9 29:5 32:17
problematic 18:17
proceed 2:19 3:1 21:12
proceedings 35:23 36:3
process 4:7,9
produced 7:8,24
Productions 5:15

prohibit 3:10
prohibited 10:21,25 13:12 19:20 30:22
promote 16:14
proof 30:6
proper 15:24
properties 9:24
property 10:2,14,19
protect 16:18
prove 17:4
provision 10:1
public 18:18 30:4
pulled 26:10 27:24
purposes 9:12
put 26:4
putting 26:19
p.m 1:8

**Q**
question 6:14 12:1 17:15 20:6 22:2 26:24 29:4 30:9 32:10
questions 5:13 21:13 30:16
quite 5:3
quo 3:10 18:22
quote 16:6 17:16

**R**
R 36:1
raised 22:21
reached 6:18
read 15:13
reap 21:19
reason 3:25 4:8 16:4 25:23 26:4
reasonably 25:23
reasonably 25:22
recapture 32:18
receipt 24:18
receipts 4:18
receive 16:16 24:14
received 24:20 26:20
receiving 24:15,17
recognize 25:10
recognized 24:17
record 6:8 7:8,25 8:1,20 10:16 23:6 24:18 29:25
recorded 16:14
recording 16:11,21
recordings 13:4 14:10 16:16
records 6:11 7:25 8:15 6:9 10:13 10:13 11:6,13 12:9 14:3,16 18:7 18:19 22:8 30:12
refer 3:13
reference 18:9
reflected 29:25 30:12
regarding 15:12
registered 15:22
reinstate 23:7
reinstated 29:17
relate 10:11
related 8:9
relates 10:8
relating 9:15
relationship 30:4
relatively 26:16
release 7:15 8:3,4,6,11,17,19 9:1 10:5,7 13:3,6,11 14:13,24 15:6,9 19:12,17,19 20:13 23:15 24:12 24:22 25:10 26:2 33:23
released 8:4 19:11
relief 17:7
relocated 6:3
relying 24:7
remained 17:21
remaining 10:2,14,19
remedy 33:20
renew 18:25 20:3
REPORTED 1:21
Reporter 1:22 36:9
reporting 18:15
representations 23:20
request 23:5 25:24
requesting 22:5,12
required 9:16 11:1
respect 27:18,20
response 22:2,13 30:19
restraining 3:24
restricted 18:10
restrictions 17:10,13

result 23:10
retained 7:10
reunited 24:11
reversed 16:2
review 27:2 34:21
revival 12:8 13:20
reward 17:7
right 2:6,8 3:1 16:18 17:11 22:22 23:13,17,19 24:18 25:7 28:20 33:19 34:21
righteously 29:3
rights 8:9 11:12 27:20 31:1
rise 2:1 4:22
rkain@ComplexIP.com 1:17
Robbie 31:9
Robert 1:14 2:6
ROBIN 1:22 36:8,9
robinc1127@aol.com 1:24 36:11
rogue 16:24 33:21
rogues 16:25 17:4
routine 26:16
routinely 22:9
royalties 8:1,20 10:15,17 11:16,24 11:24 12:12 14:8 15:4 16:16 19:17 24:14,15,17,18,20
royalty 11:12 29:25 31:5,22
RPR 1:22
RPR-CP 36:9
RSA 8:16 10:7,10,16,19
ruled 14:2 31:4
run 7:7 20:2,14,15
running 27:22

**S**
S 36:8
sale 10:13 11:6 12:9 31:5
sales 8:14,20 14:2,10
save 34:20
saw 30:3
saying 2:25 13:7 23:17,18,19 25:15,25 29:8 32:19 34:1
says 9:20 28:20
scheduled 2:22 4:5
second 4:4 14:25
Secondly 31:2
Secretary 23:6 30:12
see 19:2 33:8 34:6,8,9,9,10,10,11 34:16
seek 4:8
seeking 3:9
sent 4:18 22:4,9,11 25:21
separate 25:3
separated 14:4
serious 22:22
served 28:16
service 5:25 6:4,9 7:18 10:11 11:2 19:6
services 8:5
session 2:1
set 17:13
settlement 7:15 8:3,4,6,11,17,19 9:2 10:5,7 13:3,6,11 14:14,24 15:7,9 19:12
seven 31:14
severe 17:9
shareholder 8:25 11:11 18:1
shareholders 9:25 10:2 17:23
sharper 33:10
shift 17:25
shirt 34:11
show 5:1 16:9 18:12 25:22 29:9 34:15
showing 23:7 26:1,2,3 34:8,8,9,10 34:10,11
shown 34:16
shows 34:16
sic 19:11
side 14:5 22:16
signature 28:14
signed 5:25 6:9 7:25 12:14 14:23 20:9,22 22:25 23:1,9 28:12 30:23,24
significant 15:25
signing 9:11
singers 5:17,18 12:17
single 7:5
sir 21:8 30:14
sitting 29:22
situation 33:21

situations 16:22
six 27:6,17 31:14
somebody 6:25 7:2,3
somewhat 14:19
song 5:18
Sony 11:21,23,24 14:16 15:5
sorry 22:14
sort 7:22
Southern 1:1 16:8 31:7,11,12
speak 3:5
Specifically 22:2
specified 4:1
spend 14:21
Spielman 1:15 2:7 27:8,17
split 8:20,21 15:6
splitting 8:22
stage 33:23
standard 4:24
standpoint 13:22 34:3
started 14:20 23:12
starting 30:4,4
State 23:7 24:1 29:17 30:13,13
statement 21:1
statements 22:18
States 1:1,12,23 36:10
stating 16:3
status 3:10 18:22 23:21
statute 9:17,20 10:7,14 20:13,15 34:19
statutory 10:9
stay 31:6
Ste 1:16,19,23 36:10
step 25:15
stepped 22:16
stipulation 35:11
Stokes 31:11
stop 4:10 8:24 20:7 25:22 33:20
stopped 4:13 24:8 30:10
strangers 12:5
stream 10:12,15 11:6,12 14:9
strict 18:13
stuff 13:7 35:6
submit 35:5
submits 22:24
submitted 21:1 22:24 23:6
subsequent 21:3 23:16
substitute 7:19
substituted 6:21 7:1
success 17:3
successful 13:22
successfully 20:16
sued 15:23
sufficiently 20:3
suggesting 16:12
suggestion 16:17
suit 4:4,4 20:20
sum 27:19,22
summary 9:18 15:17 31:13
summation 15:13
support 9:18 22:13
supporting 22:18
supposed 20:2
Supremes 7:1 16:19 32:22
sure 5:3 6:13 24:6 26:7
Survivor 17:20
switches 5:21
symbol 18:11
S.E 1:16

**T**

T 14:22 36:1,1
table 31:16
take 23:5 33:9
talk 17:2
talked 10:19
talking 6:25 12:4
tax 35:18
telephone 35:3
tell 11:10 18:4 21:20
telling 26:1
temporary 3:24
Temptations 32:5
ten 4:19 5:9,12 20:19 22:7 25:20 26:9,11,20 27:1,19,22,24 28:2 33:3,17
term 5:17
terms 3:14 9:2 17:12
testimony 12:15 29:21
Thank 3:4 20:24 21:9,10 30:17,18

35:21,22
that's 4:14 8:18 9:11,13 13:23 14:16 19:18,19 20:20 27:21 28:23 33:12
theory 31:2,15
thereof 15:12
thing 2:24 20:25
things 7:3 8:14 12:6 29:13
think 21:12 31:19,25 32:6,23,25 33:4,7 34:13
third 1:16 15:1,17 16:5 31:4
three 4:11 5:17 7:6,7,24 11:3 14:23 20:9,11 27:6,7 31:16 32:21 34:10
Ticketmaster 34:7
time 3:23 4:8 5:6,22 6:2,12,25 8:14 8:24 9:1,10 12:15 15:4 17:18 22:7 23:13 24:8,21 28:4,21 30:8 31:19,20 32:11,12,14,18,20 34:24 35:10,10,14
times 31:1
title 22:23
TLA 3:13,14 4:6 17:11 18:6
TM 18:11
today 2:24 20:25 35:12
tomorrow 2:24 35:13
tonight 31:16
Tops 32:6,7,8
tossing 33:2
tour 12:8 13:20
toured 17:17
track 35:6
trademark 3:12,12 4:6 7:20 8:8,9 8:13 10:8,20,21 11:5,13,15 12:14,18 13:13,21 14:3,25 15:1 15:3,21,22 17:16 18:6,23 19:23 20:9,11,14,16,18 22:25 23:9 24:7 29:5,6 30:23,24 31:3,6 33:1 34:5,19
TRANSCRIPT 1:11
transcription 36:3
transferred 7:16
transferring 11:25
transfers 25:5
travel 35:12
traveling 35:13
Treadwell 15:16,18
trial 3:1,2 5:1 16:2,4 17:16 34:13 34:20,24 35:11
tried 18:19 30:5
TRO 4:14
true 7:14 9:13 18:21 19:19
try 2:21
trying 6:16 16:25 18:18,22 21:16 21:17 29:9 35:6
tunc 22:25 23:9 29:5 32:17
turnover 6:23,24
two 2:22 4:5,10,11,20 7:20,24 12:4 12:5,17 13:23 23:8
two-week 34:22
type 26:16

**U**

uncertainty 12:25
unclear 12:21 32:15
understand 4:7,17 14:18 21:13 26:7
understanding 21:24 26:23
United 1:1,12,23 36:10
use 6:15,17 8:12 14:3 16:13,25 18:11

**V**

valid 17:6
various 32:15
Ventura 1:20
versus 2:3 15:16 16:6 32:16
virtue 28:11
vs 1:6

**W**

wagon 30:6
waiving 3:1
Walking 2:14
want 6:13 15:10 20:6 21:5 26:5 33:3 35:17
wanted 12:8
Wash 33:8
wasn't 26:10 27:24

way 7:17 11:21 24:5 25:16 26:24 32:24 33:5
Wednesday 1:8 35:16,17
week 2:23,23 21:6
weeks 4:11 7:4
Weiss 3:14 5:20 7:10 30:9
we'll 5:15
we're 6:3
wind 9:22 10:3 23:22
wish 3:1
witnesses 12:23
word 16:24 31:21
work 4:10 30:4
worked 12:11
working 7:24
works 9:14
world 24:10 29:19,19
worth 21:21
worthwhile 4:22
writing 11:25 23:21 35:6
written 11:22 21:21

**Y**

Yeah 34:6
year 3:21
years 7:2 16:1 20:22 23:3,23 33:2
yesterday 2:21 35:12
York 16:8 31:8,12,13
you'd 31:19

**$**

$200,000 14:21
$30,000 4:21 14:20

**0**

08-60125-CIV-MGC 1:3

**1**

1st 29:7
100 1:16 34:1
1001 1:19
11-2 1:23 36:10
13 6:18
15th 35:17,20
16 23:3
17 22:5 25:19
18 19:25 23:16 28:17 29:6
18-month 18:24 19:1 26:18,25
1967 16:11,13
1980 31:11
1983 31:8
1985 5:14,24
1986 31:13
1988 17:18
1989 31:12
1990's 12:9 13:20
1991 9:9 19:11 23:14
1992 17:19
1993 17:22
1995 7:15 8:18 12:6 13:3,4,14,25 14:7,13,24 19:8
1996 24:9 30:9
1999 31:9

**2**

2:00 1:8
20 7:2,3 19:1
2000 14:16 29:18
2001 15:17
2003 7:21 12:14,18 13:16,17,21,25 14:7,13,25 19:23 20:1,2,14 24:11 30:23
2006 3:13,14 4:6 7:21 12:7 15:1 17:11,14 18:6,23 20:16 29:7,16 30:24
2007 3:14,15 4:5 17:12 18:24 22:5 23:3,8 25:19 29:6
2008 3:17 22:11
2009 1:8
22nd 35:2
25 20:22 33:2
27th 34:23
28 22:11
28th 22:14,15

**3**

3 23:8 29:18

300 1:19
305/523-5158 1:24 36:11
33 8:21
33128 1:24 36:11
33316-1153 1:16

**4**

400 1:23 36:10
42 27:15

**5**

5 23:2 29:6
5th 22:15
5:00 35:10
51 28:15

**6**

607.1405 9:17
66 9:19 31:14

**7**

750 1:16

**8**

8 1:8
8:00 35:10
80 33:11,16
80/10 33:18
805-658-6266 1:20
82 27:15 28:16

**9**

900 32:7
91 10:24
93 8:2
93003 1:20
94 8:2
95 8:2
954-768-9002 1:18